United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYNERGEN, INC.,

    Plaintiff,

    v.

ELLIOT BRADLEY; and SYNERGEN CORPORATION,

    Defendants.
_____/

No. C 03-5699 PJH

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

Before the court is plaintiff's motion for default judgment against defendant Synergen Corporation. Defendant filed no opposition to the motion. Having read plaintiff's papers and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion as follows:

**INTRODUCTION**

Plaintiff in this case is Synergen, Inc., a California corporation.[1] Defendants are Synergen, Inc. (sued as Synergen Corporation – "Synergen Corp." – an inactive Nevada corporation[2]) and Elliott Bradley. Plaintiff Synergen, Inc., first became aware of the existence

---

[1] According to records of the California Secretary of State, Synergen, Inc., merged out of existence into SPL Worldgroup, Inc., a Delaware corporation, in December 2004.

[2] According to records of the Nevada Secretary of State, the corporate status of Synergen, Inc. (sued herein as Synergen Corp.) was revoked effective August 1, 2004. For some period of time prior to August 1, 2004, Synergen Corp. was in "default" status.

of defendant Synergen Corp. upon receiving a notice sent in error in January 2002 by the California Labor Commissioner, stating that a claim had been filed by a former employee of Synergen Corp., Ana Chavez, against plaintiff Synergen, Inc.  In July 2002, plaintiff received a notice from its bank that there was a judgment on its credit record.  Plaintiff subsequently discovered that the judgment was based on a claim that had been filed against defendant Synergen Corp.  On December 9, 2002, plaintiff sent a cease-and-desist letter informing Synergen Corp. that it was infringing on plaintiff's trademark and causing confusion.

In April 2003, plaintiff received a notice sent in error by the California Labor Commissioner, regarding a claim filed by another former employee of defendant Synergen Corp., Kathleen Mason.  On May 6, 2003, plaintiff sent Synergen Corp. and Bradley another cease-and-desist letter, which also referenced a conversation in December 2002 between plaintiff's counsel and Bradley, in which Bradley supposedly agreed to stop using the name "Synergen."  According to defendant Bradley, Synergen Corp. went out of business in June 2003, and Bradley became involved in a new business entity, American Business Advantage Corporate Services, Inc., in August 2003.  On November 18, 2003, plaintiff received an invoice from the City of Los Angeles for violations of the City's sign posting regulations.  The violation alleged in the invoice was based on an act of Synergen Corp.

On December 17, 2003, plaintiff filed the present action alleging claims of unfair business practices, trademark infringement, and trademark dilution, and seeking damages and declaratory and injunctive relief.  Bradley filed an answer to the complaint on May 25, 2004.  Synergen Corp. has made no appearance.

It appears that after the complaint was filed, the parties engaged in further discussions. On May 27, 2004, Bradley filed a request to transfer the case to the Central District of California.  On June 3, 2004, Bradley filed a notice attaching a copy of a letter he had written to counsel for plaintiff, stating that he had ceased doing business under the name of Synergen Corp., as per their agreement in the settlement negotiations.  Bradley stated in his letter that he objected to paying the $10,000 in attorneys' fees that plaintiff had demanded.  He indicated that he would pay some nominal amount, to cover the cost of the cease-and-desist

letters, but would not pay the larger amount. Also on June 3, 2004, Bradley filed a second request for change of venue.

On July 17, 2004, plaintiff filed an application for entry of default against Synergen Corp. On July 28, 2004, Bradley filed an "Answer to Request for Entry of Default" as to Synergen Corp., stating that Synergen Corp. was no longer a functional entity, and that it was no longer in business when plaintiff filed the lawsuit, as it had ceased operation in mid-2003. Bradley also indicated that he had started a new company, American Business Advantage Corporate Services, Inc., (which appears to be based in Georgia) and he explained at some length why plaintiff was incorrect when it accused Synergen Corp. of continuing to solicit business over the Internet.

On July 29, 2004, the court held a telephonic case management conference. The court denied Bradley's request for a change of venue, without prejudice, on the ground that neither request had set forth a factual basis for the request or any legal authority. The court noted that plaintiff's request for entry of default as to Synergen Corp. was pending in the clerk's office, and stated that if the request was granted, Synergen Corp. could file a request to set aside the default. The court advised Bradley that while he could proceed in propria persona, he could not represent Synergen Corp. Bradley indicated to the court that Synergen Corp. was no longer in existence and therefore had no funds to hire counsel.

Default was entered against Synergen Corp. on August 2, 2004. Default against Bradley was neither requested nor entered.[3] Plaintiff filed a motion for default judgment against Synergen Corp. on December 15, 2004, and on January 5, 2005, filed a notice stating that Synergen Corp. had not filed any opposition to the motion. On January 7, 2005, pursuant to 28 U.S.C. § 636(b)(1), the court referred the matter to a magistrate judge for proposed findings and recommendations for the disposition of the motion for default judgment. On May

---

[3] Recent mail addressed to Bradley at his address of record in Las Vegas, Nevada (the May 12, 2005, briefing order and the June 29, 2005, R&R) was returned to the court as undeliverable. Bradley has acquired representation, however, and on July 15, 2005, after the report and recommendation had been filed, attorney Daniel Richardson filed a notice of substitution of counsel for Bradley.

3

12, 2005, the magistrate judge issued a briefing order, directing plaintiff to provide evidence to support its claimed damages and their request for disgorgement of profits.

On May 25, 2005, plaintiff filed another motion for default judgment, requesting $100,000 in damages (which it refers to as an "unliquidated sum"), with the exact amount to be proven through a court-ordered accounting, plus three times its actual damages under 15 U.S.C. § 1117. Plaintiff also requested a declaration that Synergen Corp. had infringed plaintiff's trademark, as well as a permanent injunction prohibiting Synergen Corp. from using the name "Synergen" on any packaging or in its business. In addition, plaintiff requested $18,000 in attorneys' fees, plus costs of suit. Plaintiff did not provide the information regarding damages requested by the magistrate judge in the briefing order.

The magistrate judge held a hearing on the motion on June 8, 2005, and issued the proposed findings and recommendations on June 26, 2005. No party filed written objections within the time allowed by 28 U.S.C. § 636(b)(1). The magistrate judge recommended granting the motion as to the claim for trademark dilution, and denying it as to the claims for trademark infringement and unfair competition. The magistrate judge also recommended granting a permanent injunction, and denying the request for attorneys' fees.

## DISCUSSION

A.   Legal Standard

A defendant's default does not automatically entitle a plaintiff to a default judgment. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). Rather, entry of default judgment is left to the trial court's sound discretion. See id.; see also Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.1980). "In applying this discretionary standard, default judgments are more often granted than denied." PepsiCo v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999).

A party seeking a default judgment must state a claim upon which it may recover. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal,

4

826 F.2d 915, 917 (9th Cir.1987); Discovery Communications, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001).  Plaintiff is required to prove all damages sought in the complaint.  In addition, "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]."  Fed. R. Civ. P. 54(c).  In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).

Finally, fundamental fairness, required by due process of law, limits the scope of relief.  Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial § 6:131 (2003).  Under Rules 54(c) and 55(d), a judgment by default shall not award damages that are different or exceed the amount requested in plaintiff's complaint.  Similarly, under Federal Rule of Civil Procedure 8(a)(3), the demand for relief must be specific.  Therefore, a default judgment must be supported by specific allegations as to the exact amount of damages sought in the complaint.

B.     Plaintiff's Motion for Default Judgment

Plaintiff asserts six causes of action in the complaint, against both Synergen Corp. and Bradley: 1) common law unfair competition; 2) declaratory relief; 3) trademark infringement, in violation of 15 U.S.C. § 1114; 4) false declaration of origin or source, and false description or representation, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); 5) dilution of quality of mark and/or likelihood of injury to business reputation; and 6) unfair business practices, in violation of California Business & Professions Code § 17200.

In its motion, plaintiff requests "entry of default judgment for the relief requested in the complaint."  Plaintiff argues it has established trademark infringement, as the court must accept the factual allegations of the complaint as true.  Plaintiff contends that Synergen Corp.'s use of the "Synergen" mark in the packaging of its products and services constitutes false labeling, false designation of origin, and false description and representation in commerce.  Plaintiff thus appears to be seeking default judgment as to the second, third, and fourth causes of action.  It is unclear whether plaintiff also seeks default judgment as to the first, fifth, and sixth causes of action.

5

1.     The Proposed Findings and Recommendations

The court does not adopt the proposed findings and recommendations, for two reasons.  First, the proposed findings and recommendations refer throughout to a default judgment against defendant Bradley, without ever mentioning defendant Synergen Corp.  While it is true that plaintiff sued Bradley both individually and "doing business as" Synergen Corp., alleging that Synergen Corp. was not a registered California corporation and that "its definitive business status" was "unknown," see Complaint at ¶ 4, it is also clear from plaintiff's motion that default judgment was sought against Synergen Corp.,[4] not against Bradley, who did make an appearance, although somewhat late.  A default must be entered before the court can consider a motion for default judgment.  See Fed. R. Civ. P. 55.  Here the docket unambiguously reflects that the clerk entered the default of Synergen Corp. – not Bradley – on August 2, 2004, and that plaintiff moved for default judgment against Synergen Corp. – not Bradley – on December 15, 2004.  Thus, the proposed findings and recommendations as to Bradley were improper.

Second, while the proposed findings and recommendations recite the correct legal standard, the magistrate judge did not apply the standard correctly.  Specifically, rather than looking at the allegations in the complaint to determine whether the plaintiff had adequately stated a claim under each cause of action, the magistrate judge improperly found that default judgment should be denied as to two of the claims because plaintiff had failed to provide sufficient "evidence" to support its claims.  Because a court considering a motion for default judgment must take as true the well-pleaded allegations of the complaint except as to damages, the degree to which the plaintiff has provided "evidence" to support its substantive claims is not a matter for consideration.

2.     Statutory Requirements

Pursuant to Federal Rule of Civil Procedure 55(b), the court finds as follows:  Plaintiff filed the complaint on December 17, 2003.  On January 16, 2005, plaintiff filed a return of

---

[4] Moreover, the record reflects that as of the time plaintiff filed the motion for default judgment, Synergen Corp.'s "business status" was not "unknown."

service on Synergen Corp., showing service of the summons and complaint on December 29, 2003.  Synergen Corp. did not plead, appear, or otherwise manifest an intention to defend this action.  On July 28, 2004, plaintiff filed a request for entry of default as to Synergen Corp.  On August 2, 2004, the request was granted and default was entered as to Synergen Corp.  Synergen Corp. is not an infant or an incompetent person, and the Soldiers and Sailors Relief Act of 1990 does not apply.

   3.  Eitel Factors and Default Judgment

   The Ninth Circuit has found that the following factors are relevant in the district court's exercise of its discretion to award a default judgment:  (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

   With regard to the first factor, plaintiff would theoretically be prejudiced if the default judgment is not entered, because plaintiff has no other recourse for recovery.  See Pepsico, 238 F. Supp. 2d at 1177.  However, Bradley has indicated to the court that Synergen Corp. is no longer an active corporation, and has no assets.  Nevertheless, the possibility of prejudice favors granting default judgment.

   The court considers the second and third factors – the merits of plaintiff's substantive claim and the sufficiency of the complaint – together.  These two factors require that the plaintiff's allegations state a claim on which they may recover.  Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

   Plaintiff alleges the following causes of action: (1) common law unfair competition; (2) declaratory relief; (3) trademark infringement, in violation of 15 U.S.C. § 1114; (4) false declaration of origin or source, and false description or representation, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution of quality of mark and/or likelihood of injury to business reputation; and (6) unfair business practices, in violation of California

Business and Professions Code § 17200.

      a.      Trademark infringement, false designation of origin, and unfair competition claims

With regard to plaintiff's claims for trademark infringement, false designation of origin, and false description or representation, the Ninth Circuit has determined that the analyses under § 1114(a)(1) and § 1125(a) are virtually identical. Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046-47 n.8 (9th Cir. 1999). To prevail on either of these claims, a plaintiff must establish that: (1) the trademark is registered; (2) plaintiff owns the trademark; (3) plaintiff used the mark in interstate commerce; and (4) defendants used the marks without consent in a manner that is likely to cause confusion among ordinary purchasers of the goods. Chimney Safety Inst. of America v. Chimney King, 2004 WL 1465699, *2 (N.D. Cal. 2004) (citing Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1403 (9th Cir. 1997)).

The fourth prong, whether defendant's use of plaintiff's trademark is likely to cause confusion among the average consumer, is also the dispositive element for two of plaintiff's other causes of action – unfair competition under Cal. Bus. & Prof. Code § 17200 and common law unfair competition. Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 901 n.3 (9th Cir. 2002); JouJou Designs, Inc. v. JOJO Ligne Internationale, Inc., 821 F. Supp. 1347, 1353 (N.D. Cal. 1992). Therefore, this court will address these four claims together.

Registration of a trademark with the United States Patent and Trademark Office is prima facie evidence of the validity of the mark, ownership of the mark, and exclusive right to use the mark. Brookfield, 174 F.3d at 1046-47. Plaintiff alleges that it registered and currently owns the "Synergen" trademark. Plaintiff also contends that it has "used its 'Synergen' trademarks. . . to identify its products and services manufactured by it and marketed in interstate commerce throughout the United States," thus satisfying the third prong of the test. Cplt. at ¶ 8.

When evaluating the fourth prong – whether use of a trademark is likely to cause confusion among ordinary consumers – courts look to "whether a 'reasonably prudent

8

consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998).

In the complaint, plaintiff alleges that defendant has used and continues to use plaintiff's trademark, "Synergen." Plaintiff also argues that defendant is "reproducing, counterfeiting, copying and/or colorably imitating the trademarks," and that such use has "caused actual confusion and . . . will continue to cause confusion, mistake and deception." Cplt. at ¶ 37-38. Plaintiff specifically contends that defendant's use of the "Synergen" mark is confusing to consumers and the consuming public. Cplt. at ¶ ¶ 20, 22. Taking these allegations to be true, the court finds that plaintiff has established that an average consumer is likely to be confused as to the origin of the "Synergen" mark.

Furthermore, plaintiff asserts that defendant's use of plaintiff's mark was knowing and intentional. Cplt. at ¶ 40-41. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 354 (9th Cir. 1979). Because plaintiff alleges that the defendant knowingly used the plaintiff's "Synergen" trademark, this court can presume that the public is likely to be confused. Accordingly, plaintiff has adequately stated claims for common law unfair competition, unfair competition under Cal. Bus. & Prof. Code § 17200, trademark infringement under § 1114 and false designation of origin under § 1125(a), and default judgment must be granted as to those claims.

   b. Dilution

The complaint does not specify whether the claim for dilution is brought under state or federal law. To prevail on a federal claim of dilution under 15 U.S.C. § 1125(c)(1), a plaintiff must prove that it owns a famous mark, and that the defendant's use of the mark causes dilution "of the distinctive quality of the mark." To prevail on a state claim of dilution under Cal. Bus. & Prof. Code § 14330, plaintiffs must prove the "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or

9

services." The California dilution statute is "substantially similar" to the federal statute, and courts often undertake the same analysis for both. See Panavision Int'l, L.P. v. Toeppen, 945 F. Supp. 1296, 1301 n.1 (C.D. Cal. 1996).

Both federal and state dilution statutes protect only "famous marks." Pepsico, 238 F. Supp. 2d at 1175; Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 874 (9th Cir. 1999). Courts have consistently found that dilution protection extends only to a "famous" mark that is in fact a "household name." Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1011 (9th Cir. 2004); Thane Int'l, 305 F.3d at 911. Where a plaintiff fails to assert facts alleging the trademark is famous, plaintiff cannot obtain default judgment as to a dilution claim. See Chimney Safety Institute, 2004 WL 1465699 at *4.

Regardless of whether plaintiff in this case is attempting to bring its dilution claim under state or federal law, plaintiff has not alleged that the "Synergen" trademark is famous. Plaintiff does contend that the defendant's use of the name "Synergen" is "likely to cause and has caused injury to the business reputation and/or dilute the distinctive quality of Synergen's trademarks," and that the name "Synergen" has obtained substantial and valuable goodwill and recognition. Cplt. at ¶¶ 8, 36, 62, 66. However, the plaintiff does not allege that this goodwill and recognition has made Synergen "famous," even within a niche market. See Thane Int'l, 305 F.3d at 908. Because plaintiff does not assert the mark "Synergen" is famous, this court cannot enter default judgment as to the dilution claim.

The remaining Eitel factors are relatively neutral. The amount of money at stake is not clear, as the damages are unliquidated. There is little possibility of dispute as to any material facts in the case, as the court must accept all allegations with regard to Synergen Corp. as true, and Synergen Corp. has made no appearance. Bradley attempted to challenge the allegations on behalf of Synergen Corp., and was advised that while he could represent himself in the litigation, he could not represent the corporate defendant. There appears to be no question of excusable neglect, as it is undisputed that Synergen Corp. was properly served with the summons and complaint, and it appears that the parties engaged in negotiations regarding settlement of the case. Finally, while the federal rules generally favor resolving

disputes on their merits, in a case where a defendant has failed to plead, respond, or appear, and a decision on the merits is therefore impossible, "default judgments are more often granted than denied." Pepsico, 189 F.R.D. at 432.

Accordingly, the court finds that the motion for default judgment should be GRANTED as to the claims for trademark infringement, false designation of origin, and unfair competition, and DENIED as to the claim for dilution of quality of mark.

### 4. Permanent Injunction

Plaintiff seeks a permanent injunction against Synergen Corp.'s use of the "Synergen" marks on any of Synergen Corp.'s products or services.  The Lanham Act gives the court the power to grant injunctions "according to the rules of equity and upon such terms as the courts may deem reasonable, to prevent the violation" of a mark holder's rights.  15 U.S.C. § 1116(a).  Nevertheless, the grant of injunctive relief is not a ministerial act that flows as a matter of course simply because a plaintiff establishes its affirmative claims.  Westinghouse Elec. Corp. v. Gen'l Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894, 903 (9th Cir. 1997).

In the present case, plaintiff has not established that Synergen Corp. continues to use the "Synergen" marks or is likely to do so in the future.  However, a plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage.  See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.04(3)(d), at 27-48 (3rd ed. 1996).  It appears unlikely that Synergen Corp. will engage in future acts of trademark infringement, as its corporate status has been revoked.  Nevertheless, in view of Synergen Corp.'s failure to appear in this action and failure to oppose the motion, it is not absolutely clear that no future unlawful behavior will occur.  Thus, the request for a permanent injunction will be GRANTED.

### 5. Damages

In the complaint, plaintiff alleges entitlement to damages "in excess of $150,000." In the original motion for default judgment, plaintiff provided no information regarding damages. In the present motion, plaintiff seeks damages in the amount of $100,000, "an unliquidated sum representing the inconvenience caused by defendant's infringing conduct, and damage to

11

[plaintiff's] good will." Plaintiff also seeks three times actual damages sustained as a result of Synergen Corp.'s infringement of plaintiff's trademark.

Trademark infringement plaintiffs may recover (1) defendant's profits; (2) damages sustained by the plaintiff; and (3) costs of the action. 15 U.S.C.A. § 1117(a). Because awards can only compensate actual injuries, they cannot be either speculative or punitive. Courts may award up to three times the actual damage suffered by the plaintiff for Lanham Act violations. However, as noted above, a default judgment cannot exceed the amount prayed for in the demand for judgment. Fed. R. Civ. P. 54(c); see also 15 U.S.C. § 1117(a).

Plaintiff's burden in "proving up" damages is relatively lenient. Nevertheless, although the general rule is that the factual allegations of the complaint are taken as true upon entry of default, that rule does not apply to allegations relating to the amount of damages. Thus, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default. See Cripps v. Life Ins. Co. of N. America, 980 F.2d 1261, 1267 (9th Cir.1992).

In the May 12, 2005, briefing order, the magistrate judge ordered plaintiff to provide "detailed and specific" evidence in support of their claim for damages. In response, plaintiff filed a second motion for default judgment. In the new motion, plaintiff provides no evidence to support the claim for damages, stating only that "[t]he exact sum of damages . . . is to be proven through a court-ordered accounting pursuant to 15 U.S.C. § 1117." Accordingly, the court finds that plaintiff has not established an entitlement to damages, and the request will be DENIED.

6.  Accounting

In lieu of providing evidence to support its claim of damages, plaintiff requests the court to order an accounting. The Lanham Act provides, in part, that "[w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . subject to the provisions of equity, to recover (1) defendant's profits . . . . " 15 U.S.C. § 1117(a). An accounting of profits under § 1117(a) is an equitable remedy, not synonymous

12

with an award of monetary damages.

The court finds that the request must be DENIED. Plaintiff did not plead a claim for an accounting in the complaint, and did not seek an accounting in the prayer for relief. Indeed, the first mention of an accounting came after the magistrate judge ordered plaintiff to provide evidence to prove up its damages. Plaintiff has not established an entitlement to an accounting.

7. Attorneys' Fees

Plaintiff seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and 15 U.S.C. § 1117. The California Legislature adopted Code of Civil Procedure § 1021.5 as a codification of the private attorney general doctrine of attorney fees developed in prior judicial decisions. Under § 1021.5, the court may award attorney fees to a "successful party" in any action that

> has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. P. Code § 1021.5.

> [T]he private attorney general doctrine 'rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.

Maria P. v. Riles, 43 Cal.3d 1281, 1288-1289 (1987). The doctrine exists to encourage suits that enforce significant societal interests but do not involve private interests to the extent necessary to encourage litigation to enforce the right. Serrano v. Priest, 20 Cal. 3d 25, 44 (1977); Satrap v. Pacific Gas & Electric Co., 42 Cal. App. 4th 72, 77 (1996).

The court finds that the request for fees under Code of Civil Procedure § 1021.5 must be DENIED because plaintiff has not pled or shown that the filing of this action resulted in the enforcement of an important right affecting the public interest. See Maria P., 43 Cal. 3d at

13

1290-91.

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully. Stephen W. Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 825-26 (9th Cir. 1997); see also Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 825 (9th Cir. 1996); Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993).

The court finds that the request for attorneys' fees under § 1117(a) must be DENIED because plaintiff has made no showing of exceptional circumstances.[5] Here, plaintiff alleges that Synergen Corp. acted "with the deliberate intent to injure [plaintiff]" Complaint ¶ 20, and that Synergen Corp. "intended to cause confusion and mistake and intended to deceive the buyers of [Synergen Corp.'s] products into believing that they were buying products made by [plaintiff]," Complaint ¶ 41. However, plaintiff provides no evidence to support this assertion that defendants acted intentionally and wilfully. Indeed, the evidence provided by Brady shows that he took prompt action in response to plaintiff's cease-and-desist letter, and that Synergen Corp. went out of business effective June 2003.

## CONCLUSION

In accordance with the foregoing, the court GRANTS the motion for default judgment as to the first, second, third, fourth, and sixth causes of action, and DENIES it as to the fifth cause of action; GRANTS the request for a permanent injunction; DENIES the request for an accounting; and DENIES the request for attorneys' fees.

Defendant Synergen Corp. shall refrain from

---

[5] Moreover, even if plaintiff had established an entitlement to attorneys' fees, there is no showing that the requested fee is reasonable. Courts employ the lodestar method to determine a reasonable attorneys' fee award under § 1117(a). Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1214-15 (9th Cir. 2003). In order to calculate the lodestar figure, the court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. See id. Here, plaintiff has provided only the names of the attorneys who worked on this case, the billing rates of those attorneys, and the total amount claimed in fees. Plaintiff provided no contemporaneous billing records, no calculation of the number of hours worked by each attorney, and no evidence that the claimed billing rate is reasonable.

14

      a) using or displaying the name "Synergen" or any reproduction, counterfeit, copy, or colorable imitation of plaintiff Synergen, Inc.'s "Synergen" trademarks, in connection with the manufacture, sale, and marketing of products in the United States;

      b) otherwise diluting the distinctive quality of and infringing on plaintiff Synergen's Inc.'s "Synergen") trademarks; and

      c) causing likelihood of injury to plaintiff Synergen, Inc.'s business reputation and causing likelihood of confusion, deception, or mistake as to the source or origin of plaintiff's services.

The court will conduct a further case management conference in this case on Thursday, November 3, 2005, at 2:30 p.m., at which time the parties shall be prepared to discuss whether a final judgment against Synergen Corp. would be appropriate under Federal Rule of Civil Procedure 54(b).

**IT IS SO ORDERED.**

Dated: September 28, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge